**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **RENEWABLE RESOURCES** | § | |
| **GROUP, INC.,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. _____** |
| | § | |
| **BANK OF LONDON AND THE** | § | |
| **MIDDLE EAST,** | § | |
| **Defendant.** | § | |

## COMPLAINT

### Parties

1.      Plaintiff Renewable Resources Group, Inc. ("RRG") is a corporation organized under the laws of Texas with its principal place of business in Houston, Texas.

2.      Defendant Bank of London and The Middle East ("BLME") is a foreign bank registered in England with its registered office at Sherborne House, 119 Cannon Street, London, EC49 5AT, United Kingdom.

### Jurisdiction

3.      Jurisdiction is proper pursuant to 28 U.S.C. §1332.  The amount in controversy, without interest and costs exceeds $75,000.

### Facts

4.      On April 10, 2008, RRG and BLME entered into a contract whereby RRG appointed BLME as the sole arranger and provider of a credit facility to refinance existing financial obligations related to a biodiesel production facility located in New Boston, Texas (the "Contract").  *See* Mandate Letter dated April 10, 2008 attached as **Exhibit "1"**.  Pursuant to the terms of the Contract, BLME was to provide a credit facility to RRG reflected by a term sheet which was integrated and

incorporated in its entirety into the Contract.  *See* Summary of Indicative Terms and Conditions (the "Term Sheet") attached as **Exhibit "2"**.

5.     The terms of the Contract provided that RRG would reimburse BLME for any reasonable travel and other out of pocket costs and expenses ***reasonably*** and properly incurred by BLME in connection with the transaction contemplated by the Term Sheet, including fees and disbursements of external legal counsel and other advisors appointed to undertake due diligence.  In addition, the Contract provided that any expenses in excess of $150,000 in aggregate would be subject to prior written approval of RRG.  The Contract provided that it would terminate on June 30, 2008 if definitive documentation had not been executed and conditions precedent satisfied by that date.

6.     On June 30, 2008, RRG and BLME executed an amendment to the Contract which increased the cap on expenses to $300,000 and extended the date of termination to July 31, 2008.  *See* Amendment to Mandate Letter attached as **Exhibit "3"**.

7.     On August 12, 2008, BLME notified RRG of a financing proposal approved by its credit committee the day before.  The proposal contained terms not contemplated by the Term Sheet. As the terms proposed by BLME were not at all in keeping with the terms initially proposed in the Term Sheet, no final financing agreement was reached.

8.     BLME now seeks reimbursement from RRG for expenses in excess of $300,000. Most of those expenses were billed by external legal counsel.  The external legal counsel's billings indicate that seven attorneys worked on this matter and work performed after the Contract termination date of July 31, 2008 is included.  Moreover, the billings do not include attorney billing rates or the time spent on any activities.

## Request for Declaratory Relief

9.      RRG seeks relief pursuant to 28 U.S.C. §2201.  An actual controversy has arisen and now exists between RRG and BLME regarding RRG's duties under the Contract to reimburse BLME for expenses.  Specifically, RRG contends that it is not responsible for reimbursement of expenses that are unreasonable and/or not related to the transaction contemplated by the Term Sheet made a part of the Contract.

10.      RRG desires a judicial determination of its duties and obligations under the Contract relating to reimbursement of reasonable expenses relating to the transaction as contemplated by the Term Sheet.  A judicial declaration is necessary and appropriate at this time under all the circumstances so that RRG may determine its obligations under the Contract.

**WHEREFORE**, Plaintiff Renewable Resources Group, Inc. requests judgment as follows:

(1)      A declaration that Plaintiff Renewable Resources Group, Inc. has no obligation to reimburse BLME for expenses that are unreasonable and/or not related to the transaction contemplated by the Contract;

(2)      reasonable and necessary attorney's fees;

(3)      costs of court; and

(4)      such other and further relief as the Court deems just and proper.

Respectfully submitted,

_____
**Lloyd R. Cunningham, 05247500/4609**
12 Greenway Plaza, Suite 1310
Houston, TX 77046
Telephone:     (713) 961-9929
Facsimile:     (713) 961-9788

**Attorney-in-Charge for Plaintiff**
**Renewable Resources Group, Inc.**

**OF COUNSEL:**

**CUNNINGHAM LAW GROUP**
**Lori A. Swann, 19552500/88285**
12 Greenway Plaza, Suite 1310
Houston, Texas 77046
Telephone:     (713) 961-9929
Facsimile:     (713) 961-9788

# EXHIBIT '1'



**BANK OF LONDON AND THE MIDDLE EAST**

**STRICTLY PRIVATE & CONFIDENTIAL**

Sherborne House
119 Cannon Street
London EC4N 5AT
Tel +44 (0)20 7618 0000
Fax +44 (0)20 7618 0001
Email info@blme.com
Website www.blme.com

Renewable Resources Group, Inc.
4119 Montrose Blvd., Suite 400
Houston
Texas 77006

10 April 2008

For the attention of Mr Jerrel Branson, Chief Executive Officer

Dear Sirs,

**Red River Biodiesel Limited**
**Sale and Leaseback Facility (the "Facility")**

Bank of London and The Middle East ("**BLME**") is pleased to attach an indicative Term Sheet (the "**Term Sheet**") prepared for Renewable Resources Group, Inc. (the "**Company**") outlining the principal terms and conditions of the proposed Facility. The Term Sheet forms an integral part of this mandate letter and is incorporated in its entirety (collectively, the "**Letter**").

If the Company is in agreement with the terms and conditions below, please execute the enclosed copy hereof and return it to BLME for the attention of Philip Nias. BLME's offer to provide the Facility shall expire in the event that BLME does not receive an executed copy of this Letter by 18 April 2008 (the "**Expiration Date**") or such later date mutually agreed in writing by both parties.

BLME will not instruct external legal counsel or other advisors or incur any other expense in connection with the Facility unless or until this Letter is executed.

The Company confirms that it appoints BLME as sole arranger and provider of the Facility. Accordingly, the Company undertakes not to discuss the arrangements for the Facility with any bank or financial institution other than BLME without BLME's prior written consent so long as this Letter remains in force.

---

CONFIDENTIAL                                                1

Bank of London and The Middle East plc
Authorised and regulated by the Financial Services Authority
Registered in England & Wales No. 05897286. Registered Office 165 Queen Victoria Street, London EC4V 4DD



### A.    Fees and Expenses

In consideration of the Facility to be provided by BLME, the Company shall pay to BLME the fees as set out in and in accordance with the Term Sheet.

In addition, regardless of whether the transaction contemplated hereunder is consummated (i.e. achieves financial close), the Company shall reimburse BLME for any reasonable travel and other out of pocket costs and expenses reasonably and properly incurred by BLME in connection with work undertaken in respect of the Facility, including without limitation fees and disbursements of external legal counsel and other advisors appointed to undertake due diligence (including development and audit of the financial model) (the "Expenses").  BLME will use reasonable endeavours to agree caps on fees with external advisers.  Any Expenses in excess of USD 150,000 in aggregate will be subject to the prior written approval of the Company (which may be by e-mail), such approval not to be unreasonably withheld.  Such expenses shall be due and payable upon demand by BLME or, at BLME's discretion, shall be due and payable at closing.  The Company also agrees to reimburse BLME for all reasonable costs and expenses of BLME, including without limitation reasonable fees and disbursements of external legal counsel, incurred in connection with the enforcement of any of its rights and remedies hereunder.

All payments hereunder shall be made free and clear of any set-off, withholding, claims or applicable taxes and shall be made in US Dollars (unless otherwise specified).

This provision shall survive the termination of this Letter.

### B.    Indemnification

The Company shall indemnify and hold harmless each of BLME and its affiliates and each of its and their respective officers, directors, partners, employees, representatives and agents (each an "Indemnified Party" and collectively "Indemnified Parties") from and against any direct actual losses, claims, damages, liabilities and reasonable expenses (including without limitation fees and disbursements of external legal counsel) resulting from or arising out of (a) the transaction contemplated hereunder or the use of proceeds there from, (b) the engagement of and the performance by each Indemnified Party hereunder or (c) the breach by the Company of any of its representations, warranties, covenants or agreements hereunder as determined by a mutual agreement between the Company and each Indemnified Party or by a final non-appealable judgment of a court of competent jurisdiction, other than losses, claims, damages, liabilities or expenses resulting solely or primarily from such Indemnified Party's negligence or wilful misconduct as determined by a mutual agreement between the Company and each Indemnified Party or by a final non-appealable judgment of a court of competent jurisdiction.

---

CONFIDENTIAL                            2

Bank of London and The Middle East plc
Authorised and regulated by the Financial Services Authority
Registered in England & Wales no. 05817786  Registered Office 165 Queen Victoria Street  London EC4V 4DD



The Company hereby holds harmless, releases and discharges each Indemnified Party from and against any direct actual losses, claims, damages, liabilities or reasonable expenses resulting from or arising out of the matters referenced in sub-clauses (a), (b) or (c) above as determined by a mutual agreement between the Company and each Indemnified Party or by a final non-appealable judgment of a court of competent jurisdiction, other than losses, claims, damages, liabilities or expenses resulting solely or primarily from such Indemnified Party's negligence or wilful misconduct as determined by a mutual agreement between the Company and each Indemnified Party a final non-appealable judgment of a court of competent jurisdiction.

In no event shall any Indemnified Party be liable for any consequential damages.

This indemnification and release provision shall survive the termination of this Letter.

## C.    Confidentiality

BLME and the Company each agree that the existence of this Letter and the terms and conditions hereof are confidential and may not be disclosed by either party to any third party, without the other party's prior written consent, except to the extent that such disclosure:

(i)      is required by law, regulation, supervisory authority, or other applicable judicial or governmental order;

(ii)     relates to information that was or becomes generally available to the public other than as a result of a disclosure by one of the parties; or

(iii)    is made on a comparable confidential basis to either parties' attorneys, accountants, tax or other advisors on a need to know basis.

The Company acknowledges that BLME may share with any of its affiliates any information provided by the Company or its subsidiaries and affiliates in connection with the proposed transaction, provided that BLME warrants that its affiliates shall treat such disclosed information as confidential in compliance with the provisions in this Letter, and that BLME reserves the right to employ the services of such subsidiaries and affiliates in order to fulfil its obligations under this Letter, excluding the use of subsidiaries and affiliates acting as the Purchasing Bank as described in the Letter.

The Company should be aware that other parties with conflicting interests may also be BLME's customers, and that BLME may be providing financial or other services to them. However, BLME assures that, consistent with its long-standing policy to hold in confidence the affairs of its customers, BLME will not furnish confidential information obtained from the Company to any other customer. By the same token, BLME will not make available to the Company confidential information that BLME has obtained from any other customer.

---

CONFIDENTIAL                                    3

Bank of London and The Middle East plc
Authorised and regulated by the Financial Services Authority
Registered in England & Wales no. 05897786. Registered Office 165 Queen Victoria Street, London EC4V 1DD



This provision shall survive the termination of this Letter.

## D. Termination

The Company and BLME agree that this Letter will not terminate unless:

(i) definitive documentation has not been executed and conditions precedent have not been satisfied or waived (i.e. **Financial Close** has not been achieved) by 30 June 2008 or such later date that the Parties mutually agree in writing and initial funding has not occurred by that date;

(ii) the Company and BLME fail to agree documentation and/or security to the satisfaction of BLME; or

(iii) BLME is unable to commit to underwrite or provide funding for 100% of the Facility. The Company acknowledges that in order to underwrite 100% of the Facility, it is necessary for BLME to introduce other bank(s), in consultation with the Company, then this will not give rise to Termination unless such other bank(s) are not reasonably acceptable to the Company and/or there is a failure to reach agreement with such other bank(s).

The Letter will be deemed to be terminated following the occurrence of any of the above upon written notice and from the effective date of such notice. In all cases, the Company undertakes to pay BLME all outstanding Expenses upon Termination.

## E. Governing Law; Jurisdiction; Waivers

Without regard to principles of conflicts of laws, BLME and the Company hereby agree that this letter shall be governed by, and construed in accordance with, the laws of England.

With respect to any action or proceeding arising out of relating to this Letter or the transaction contemplated hereby or the performance of any of the parties hereunder, the Company hereby irrevocably (a) submits to the non-exclusive jurisdiction of England; (b) agrees that all claims with respect to such action or proceeding may be heard and determined in such court; (c) waives the defence of any inconvenient forum, (d) agrees that a final judgment or in any such action or proceeding shall be conclusive and may be enforced in another jurisdiction by suit on the judgment or in any other manner provided by law; and (e) to the extent that it or its properties or assets has or hereafter may have acquired or be entitled to immunity (sovereign or otherwise) from jurisdiction of any court or from any legal process (whether through service of notice, attachment prior to

CONFIDENTIAL                    4

Bank of London and The Middle East plc
Authorised and regulated by the Financial Services Authority
Registered in England & Wales No 05897687. Registered Office: 145 Queen Victoria Street, London EC4V 4DD



judgment, attachment in aid of execution of a judgment or from execution of a judgment or otherwise), for itself or its properties or assets, agrees not to claim any such immunity and agrees such immunity. The Company represents and warrants that it has consulted with counsel and understands the ramifications of the foregoing.

This provision shall survive the termination of this letter.

**F.    Amendments; Assignment**

This Letter may not be amended or modified except in a writing signed by both parties hereto. This Letter contains the entire agreement between BLME and the Company and supersedes all prior understandings, written or oral, between the parties.

The Company and BLME may not assign or delegate any of their undertakings hereunder without the prior written consent of the other party.

**G.    Miscellaneous**

For the convenience of the parties, any number of counterparts of this Letter may be executed by the parties hereto. Each such counterpart shall be, and shall be deemed to be, an original instrument, but all such counterparts taken together shall constitute one and the same agreement.

Notwithstanding the engagement of any advisors by the Company, BLME and the Company acknowledge and agree that there are no brokers, representatives or other persons that have an interest in the compensation due to BLME from any transaction contemplated herein.

The Company and BLME agree that BLME shall be considered an independent contractor in relation to the Company under this Letter.

---



Bank of London and The Middle East plc
Authorised and regulated by the Financial Services Authority
Registered in England & Wales No. 05897786. Registered Office 185 Queen Victoria Street, London EC4V 4DD



**BANK OF LONDON
AND THE MIDDLE EAST**

Please acknowledge your agreement to the terms and conditions hereof and of the attached Term Sheet by signing the enclosed copy of the Letter below and returning same to BLME before the Expiration Date referred to above.

Yours faithfully
For and on behalf of
Bank of London and The Middle East PLC

PHILIP NIAS

Agreed to and accepted this 10 day of _April_, 2008:

By: _____

Name: Oliver Rodz

Title: Manager & President

Bank of London and The Middle East plc
Authorised and regulated by the Financial Services Authority
Registered in England & Wales No. 05897786. Registered Office: 165 Queen Victoria Street, London EC4V 4DD

# EXHIBIT '2'

Confidential



**Red River Biodiesel Limited**

**Term financing for Biodiesel Facility**

**Summary of Indicative Terms and Conditions**

**10 April 2008**

**Sale and Leaseback Facility**

**Indicative terms only, not for acceptance, subject to due diligence, approval by BLME's Credit Committee and documentation subject to BLME's Sharia'a Supervisory Board.**

| | |
|---|---|
| Facility Type: | Sale and Leaseback – Ijara |
| Lessee: | Red River Biodiesel Limited (RRBL) |
| Arranger and Agent: | Bank of London and The Middle East (BLME) |
| Islamic Financier(s): | BLME [and other Islamic institutions selected by BLME.] |
| Purchaser/Lessor: | A special purpose company (SPC) in whose assets BLME is to have 100% beneficial ownership interest.  Funding for the purchase and rental payments will be routed through the SPC. |
| Project: | A 15,000,000 barrel per annum multi-feedstock biodiesel production facility located in New Boston, Texas, USA. |
| Ijara Assets: | Plant and equipment forming part of the Project to be defined. |
| Purpose: | To refinance existing financing obligations in respect of capital expenditure and other related construction costs approved by the Arranger in connection with the Project. |
| Currency: | USD |
| Facility Amount: | Up to USD [13,500,000] subject to due diligence and not exceeding [75%] of the total capital expenditure of the Project. |
| Availability Period: | Subject to satisfaction of all Conditions Precedent the Facility will be available for a period of 3 months from signing the Facility Agreement. |
| Financial Close: | The date on which all Project Documents [to be defined] have been executed and all Conditions Precedent have been satisfied or waived by BLME; |
| Final Maturity: | [7] years from signing. |

**Confidential**

| | |
|---|---|
| Profit Margin: | [3.50%] per annum |
| Rental Payment: | The sum of:<br>(i)   3 month LIBOR;<br>(ii)  the Profit Margin;<br>(iii) amounts payable in respect of insurance and major maintenance (see below under Insurance and Maintenance); and<br>(iv)  the Repayment Amount. |

Rental Payments will be made quarterly, the first payment being 3 months after signing.

A fixed Rental Payment based on the period and amortisation profile of the lease will be considered as an alternative to payments based on a floating rate.  In this case item (i) above will be based on a fixed rate – see also Repayment Amount below.

| | |
|---|---|
| Rental Period: | Each 3 month period, the first commencing on signing and the last ending at the Final Maturity date. |
| Lease Period: | The lease Period will end upon final repayment at Final Maturity or earlier if prepaid at which point the title of the Ijara Assets will pass back to the Lessee. |
| Arrangement Fee: | [1.25%] of the Facility Amount payable upon signing. |
| Agency/Management Fee: | USD [15,000] per annum |
| Drawdown: | Subject to satisfaction of the Conditions Precedent, the Facility will be drawn in one instalment at the time of Purchase. |
| Repayment and Repayment Amount: | In 28 [equal] quarterly Repayment Amounts forming part of each Rental Payment.  On the basis of fixed rate financing, Repayment Amounts will be calculated on the basis of an annuity profile resulting in equal quarterly Rental Payments (excluding amounts in respect of insurance and major maintenance, item (iii) of Rental Payment). |
| Cash Sweep Mechanism: | [to be determined in the light of due diligence and financial model sensitivities]; [in principle to reduce maturity from 7 to 5 years] |
| Mandatory Prepayment: | Usual Mandatory Prepayment provisions for a facility of this nature, including full repayment of the facility in the event of, inter alia:<br><br>(i)   Total Loss [to be defined but to include stipulated loss value] of the Ijara Assets;<br>(ii)  Refinancing of the Project;<br>(iii) Acceleration following the occurrence of an Event of Default |

10 April 2008

**Confidential**

| | |
|---|---|
| Voluntary Prepayment: | The Lessee may prepay the Facility in full [as per early termination value schedule] together with any associated breakage costs at the end of any rental period without penalty, subject to 1 months' notice.  Upon full prepayment, title of the Ijara Assets would pass back to the Lessee. |
| Delay Payment: | A late payment fee on any sums overdue equal to applicable LIBOR plus applicable Profit Margin plus [1%] per annum.  After deduction of administrative expenses BLME will pay such sums to a charity under the supervision of the Sharia'a Supervisory Board of BLME and/or other Islamic Financiers as appropriate. |

Application of Project Cash Flows
(Cash Flow Waterfall):

Cash flows will be applied in the following priorities:

(i)    Scheduled operating and maintenance costs;
(ii)   Tax expenditure;
(iii)  Payment of any amounts due but unpaid under the Facility;
(iv)  Payment of Rental Payments;
(v)   Payments into the Rental Payment Reserve Account
(vi)  Prepayments according to the Cash Sweep Mechanism:
(vii) Mandatory Prepayments;
(viii) Voluntary Prepayments;
(ix)  Dividend distributions.

| | |
|---|---|
| Rental Payment Reserve Account: | Reserve account with minimum balance at all times to be maintained equivalent to the next two Rental Payments adjusted to take account of the future major Maintenance costs [by a formula to be determined in the light of technical due diligence.] |
| Insurance and Maintenance: | The cost of insurance and major maintenance will be the responsibility of the Lessor but will be reimbursed by the Lessee through the Rental Payments.  The responsibility for taking insurance and carrying out major maintenance will be sub-contracted to the Lessee under the terms of the Sale and Purchase Agreement.  Routine maintenance costs will at all times be the responsibility of the Lessee. |

Security:

Usual for a facility of this type to include, inter alia, the following:

(i)    Pledge of shares in RRBL;
(ii)   Assignment by way of security over all RRBL's rights under Project Documents, including contracts with feedstock suppliers and product offtakers;
(iii)  Assignment over receivables;
(iv)  Assignment of Project insurances;
(v)   Charge over Project accounts through which all Project cash flows will be channelled; and
(vi)  Assignment over warranties from construction contractor.

10 April 2008

Confidential

|  | The security package will be documented as the Security Documents |
|---|---|
| Conditions Precedent: | Usual for a facility of this type to include, inter alia, the following (in all cases in a form and substance to the satisfaction of BLME): |

(i)   Execution of all Project Documents (including Lease Agreement and Security Documents);
(ii)  Corporate documentation, authorisation and Board Resolutions;
(iii) Relevant Know Your Customer (KYC) documentation;
(iv)  Satisfactory insurances;
(v)   No Event of Default;
(vi)  No Material Adverse Effect;
(vii) Legal opinions from counsel to the BLME;
(viii) Satisfactory initial and on-going due diligence on the Project including technical, environmental, market, insurance and financial model audit;
(ix)  Base Case Financial Model at Financial Close showing minimum Financial Service Cover Ratio of [1.95] and Financing Life Cover Ratio of [2.00] [ratios to be determined – see below];
(x)   Satisfaction that the Seller's security has been perfected; and
(xi)  No change in control of RRBL.

| Representations and Warranties: | Usual for a facility of this type [to be defined]. |
|---|---|
| Covenants: | Usual for a facility of this type [to be defined] to include, inter alia: |

(i)   General and information covenants (provision of information etc.);
(ii)  Project related covenants including:
   • compliance with obligations;
   • compliance with environmental laws and regulations;
(iii) Financial covenants including:
   • Limitations on further indebtedness/negative pledge;
   • Maintenance of reserve accounts;
   • Cover ratios [to be determined based on the financial model and sensitivities and in the light of due diligence];
      1. Minimum Base Case Cover Ratios:
         $FSCR^1$          [1.95]
         $FLCR^2$          [2.00]
      2. Dividend Lock-up Cover Ratios:
         $FSCR^1$          [1.70]
         $FLCR^2$          [1.75]
         Current and forward looking
      3. Cash sweep trigger levels:
         $FSCR^1$          [   ]
         $FLCR^2$          [   ]
         [Triggers to be determined]
      4. Default cover ratios
         $FSCR^1$          [1.05]

10 April 2008

Confidential

FLCR[2]        [1.10]
Current and forward looking

[1] Financing Service Cover Ratio [to be defined]
[2] Financing Life Cover Ratio [to be defined]

| | |
|---|---|
| Events of Default: | Usual for a facility of this type to include, inter alia, the following:<br><br>(i) Insolvency of the Lessee;<br>(ii) Material breach of the Project Documents;<br>(iii) Cross default with any other indebtedness of the Lessee;<br>(iv) Non-payment of any amounts due under the Facility;<br>(v) Breach of warranty and/or covenants;<br>(vi) Unauthorised change of share ownership in RRBL. |
| Documentation: | All documentation will be Sharia'a compliant and together with legal opinions will be prepared by legal counsel appointed by the Arranger. |
| Material Adverse Effect: | A event, occurrence or condition that has materially impaired, or which is reasonably likely in the view of the Arranger and Majority Islamic Financiers, as compared with the situation that would prevail but for such event, occurrence or condition:<br>(i) The ability of the Lessee to perform its respective obligations under any Project Document; or<br>(ii) The rights of the Islamic Financiers under any Project/Security Document. |
| Taxation and Tax Gross-up: | All payments of principal, profit, fees and any other amount under the Facility to be without deduction and free and clear of taxes. Any such tax or other deduction shall be for the account of the Lessee. |
| Transferability: | The Arranger may transfer its commitment, in whole or in part with the prior written consent of the Lessee, which consent will not be unreasonably withheld. |
| Expenses: | All BLME's legal, technical, environmental, market and insurance due diligence and model development and audit costs and all other out of pocket expenses reasonably and properly incurred by the BLME in connection with arranging the Facility will be for the account of the Lessee, whether or not the transaction is ultimately entered into or any amount ever drawn under it. |
| Applicable Law: | This term sheet and all other Project Documents (including Security Documents) to be governed by the Laws of [England]. |

These Indicative Terms and Conditions are provided for discussion purposes only, not for acceptance and subject to the satisfactory outcome of BLME's due diligence, approval by BLME's Credit Committee and satisfactory documentation subject to BLME's Sharia'a Supervisory Board.

10 April 2008

Confidential

These Indicative Terms and Conditions do not give rise to any legal obligations and does not constitute a binding offer or commitment to provide finance or any form of financial support, nor shall it be construed or interpreted as to do so.

These Indicative Terms and Conditions may not in any circumstances whatsoever be disclosed to, or relied upon by, any third party without the prior written permission of BLME.

10 April 2008

# EXHIBIT '3'



**BLME**

**BANK OF LONDON
AND THE MIDDLE EAST**

**STRICTLY PRIVATE & CONFIDENTIAL**

Sherborne House
119 Cannon Street
London EC4N 5AT
**Tel** +44 (0)20 7618 0000
**Fax** +44 (0)20 7618 0001
**Email** info@blme.com
**Website** www.blme.com

Renewable Resources Group, Inc.
4119 Montrose Blvd., Suite 400
Houston
Texas 77006                                                                 27 June 2008

For the attention of Mr Jerrel Branson, Chief Executive Officer

Dear Sirs,

**Red River Biodiesel Limited**
**Sale and Leaseback Facility (the "Facility")**
**Amendment to Mandate Letter (the "Amendment Letter")**

We refer to the mandate letter (the "Mandate Letter") dated 10 April 2008 agreed and
accepted by Renewable Resources Group, Inc. (the **"Company"**), acting on behalf of
Red River Biodiesel Limited ("RRBL"). The purpose of this letter is to amend the terms
of the Letter as set out below.

**A.     Fees and Expenses**

The cap figure of USD 150,000 is amended to USD 300,000. It is acknowledged that
approval has been given already (by e-mail dated 28 May 2008) to exceed the original
cap.

**D.     Termination**

The date of termination in sub-paragraph (i) is amended from 30 June 2008 to 31 July
2008.

All other provisions in the Mandate Letter remain unaffected by this Amendment Letter.

---

CONFIDENTIAL                                    1

Bank of London and The Middle East plc
Authorised and regulated by the Financial Services Authority
Registered in England and Wales No. 05897786. Registered Office: Sherborne House, 119 Cannon Street, London EC4N 5AT



We would be grateful if you could signify your agreement to this Extension by countersigning this letter where indicated and returning a scanned copy to us.

Yours faithfully
For and on behalf of
Bank of London and The Middle East PLC

*Philip J Nias*

PHILIP NIAS

Agreed to and accepted this __30__ day of __June__, 2008:

By: _____

Name: *Oliver Roelz*

Title: *Manager & President*

Bank of London and The Middle East plc
A wholly owned subsidiary of the Private listed company
Registered in England & Wales No. 05897786 Registered Office: Sherborne House, 119 Cannon Street, London EC4N 6AS

✎JS 44  (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| RENEWABLE RESOURCES GROUP, INC. | BANK OF LONDON AND THE MIDDLE EAST |

**(b)** County of Residence of First Listed Plaintiff  HARRIS
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)
Cunningham Law Group 12 Greenway Plaza Ste 1310 Houston TX 77046  713/961-9929

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
        Plaintiff

☐ 3  Federal Question
        (U.S. Government Not a Party)

☐ 2  U.S. Government
        Defendant

☒ 4  Diversity
        (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                                    and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1  Original
        Proceeding

☐ 2  Removed from
        State Court

☐ 3  Remanded from
        Appellate Court

☐ 4  Reinstated or
        Reopened

☐ 5  Transferred from
        another district
        (specify)

☐ 6  Multidistrict
        Litigation

☐ 7  Appeal to District
        Judge from
        Magistrate
        Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1332, 28 U.S.C. § 2201
Brief description of cause:
request for declaratory judgment regarding contract

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
    UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE
09/21/2009

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #                AMOUNT                APPLYING IFP                JUDGE                MAG. JUDGE